IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MEGAN THOMSON,<br><br>     Plaintiff,<br><br>v.<br><br>ALHPA COUNSELING & TREATMENT, INC.<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:21-cv-00514-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

In this action, Megan Thomson ("Plaintiff") alleges employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, breach of contract, violation of the duty of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress against her former employer, Alpha Counseling & Treatment, Inc. ("Defendant" or "Alpha"). Before the court are two motions: (1) Defendant's Motion for Summary Judgment, ECF No. 33 ("Motion"), and (2) Defendant's Motion for Rule 11 Sanctions, ECF No. 35 ("Sanctions Motion"), which stems from alleged misrepresentations in the Complaint.

Because Plaintiff failed to make a prima facie case of employment discrimination under Title VII, *and* because Plaintiff failed to establish a genuine issue of material fact as to Alpha's proffered non-discriminatory reasons for her termination, this court concludes that summary judgment is appropriate as to Plaintiff's discrimination claim, and therefore **GRANTS** Defendant's Motion as to Claim One. Given the disposition of Plaintiff's sole federal claim, this court declines

to exercise supplemental jurisdiction over Plaintiff's remaining claims, all of which arise under state law, and thus **DISMISSES** without prejudice Claims Two through Four for lack of jurisdiction. Additionally, for the reasons set forth below, Defendant's Sanctions Motion is **DENIED**.

## FACTUAL BACKGROUND

This action centers on Alpha's termination of Ms. Thomson's employment in July of 2020. *See* ECF No. 2 ("Complaint") at 3. Alpha is a "mental health company that employs approximately 40 therapists to perform mental health counseling services in various settings in the states of Utah and Wyoming." Motion at 2.[1] Alpha contracts with various governmental entities, including the Utah Department of Corrections, the Wyoming Department of Corrections, United States District Courts, the Federal Bureau of Prisons, and "various county correctional facilities" to perform counseling and related services to sex offenders. *Id.* at 3. In 2019, Ms. Thomson was hired by Alpha as an Associate Clinical Mental Health Counselor. Complaint at 1.

As a therapist in Alpha's employ, Ms. Thomson "provided mental health counseling for incarcerated sex offenders at the Utah State Prison and the Wyoming Medium Correctional Institute," in addition to seeing some outpatient clients. Motion at 7. In its Motion, *see id.* at 8-11, Defendant claims that Ms. Thomson had a number of performance issues, the bases for which Plaintiff generally disputes. *See* ECF No. 40 at 3-5.

---

[1] Note that all statements of fact in this section, regardless of source cited, are laid out in admissible evidence contained in the record and undisputed by either party (unless otherwise indicated). Citation to Defendant's motion for summary judgment, for example, as seen here, rather than to particular lines from declarations, depositions, or other exhibits, is simply for the sake of economy. Underlying citations to the record may be found therein. Out of respect for Plaintiff, the court does, however, go to great length to avoid repetition of unnecessary or salacious details or facts which are not required for the disposition of the two motions resolved in this order.

However, as relevant here, during her time at Alpha, Ms. Thomson provided group and individual counseling services to a Mr. Michael Maus, who was, at that time, incarcerated in the Utah State Prison. Motion at 11. Ms. Thomson began working with Mr. Maus in March of 2020. *Id*. Ms. Thomson's Complaint alleges that she told her supervisor, Mr. Jeff Moore, in April of 2020, that Mr. Maus "seemed to be getting attached to her." Complaint ¶ 19. Mr. Moore denies that he was told as much. Motion at 12.

In any event, on or about June 24, 2020, "Maus mailed Thomson a letter to one of Alpha's offices." *Id*. Mr. Moore opened the letter and "immediately recognized that it appeared to be expressing romantic feelings toward Thomson." *Id*. at 13. Mr. Moore forwarded the letter to an official at the Utah State Prison, Mr. Greg Hendrix, "to determine whether Maus should be punitively removed from the Sex Offender Treatment Program." *Id*. at 14 (cleaned up). Mr. Hendrix then asked Alpha for Ms. Thomson's telephone number so that prison investigators could "see the extent to which Maus was communicating with Thomson." *Id*. Prison investigators identified 144 calls made by Mr. Maus to Ms. Thomson's number from the period of May 2020 through the end of June 2020. *Id*.

On the basis of this information, Mr. Hendrix, an employee of the Utah Department of Corrections, informed Alpha on July 1, 2020 that, because of her contact with Mr. Maus, Ms. Thomson was "banned from entering the Prison." *Id.* at 15. As a result of Mr. Hendrix's decision regarding the Utah State Prison, an official affiliated with the Wyoming Prison informed Alpha that Ms. Thomson would similarly be barred from providing therapy at the Wyoming Prison, where she was working that day. *Id*. at 27-28.

Alpha decided to terminate Thomson's employment "immediately upon getting word from Hendrix that he had banned her from the Utah State Prison due to her improper conduct with Maus." *Id*. at 27.

That same day—July 1, 2020—Ms. Thomson was instructed to exit the Wyoming facilities and call Mr. Moore, although neither could reach the other. *Id*. At some point that day, Ms. Thomson left the Wyoming Prison and experienced what seems to be best characterized as a mental health crisis that resulted in her admission to a hospital. *Id*. at 28-31. "Out of concern for her well-being, Alpha did not want to contact Thomson about her termination until she was more stable," *id*. at 31, and on July 7, after several previous attempts at contact, Mr. Moore confirmed to Ms. Thomson that "her employment had been terminated." *Id*. at 31-32.

Ultimately, Ms. Thomson was released from the hospital and has since resumed employment as a mental health counselor. *Id*. at 32.[2] Thomson exhausted her administrative remedies and was issued a Notice of Right to Sue from the Equal Employment Opportunity Commission dated June 1, 2021. Complaint at 4.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A fact is material only if it

---

[2] Although Plaintiff's Opposition brief, ECF No. 40 at 16, apparently challenges the materiality of the fact underlying this factual assertion, there appears to be a scrivener's error at play by which Plaintiff intended to respond to Defendant's *following* statement of fact (i.e., ¶ 159 rather than ¶ 158).

might affect the outcome of the suit under the governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pittman v. Am. Airlines, Inc.*, 692 F. App'x 549, 552 (10th Cir. 2017).

Once the movant has met this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). When applying the summary judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

However, this does not mean that nonmovants may "defeat summary judgment by relying on ignorance of the facts, on speculation, or on suspicion." *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (citation omitted). "Rather, to defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (cleaned up). In any case, a plaintiff "must still identify sufficient evidence requiring submission to the jury." *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1142 (10th Cir. 2009); *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

### I.    Claim One: Title VII

Plaintiff's First Claim—and the only claim under which this court has original jurisdiction—is pleaded under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2,

which prohibits discrimination in employment on the basis of certain protected characteristics, including sex. "In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1048 (10th Cir. 2020).

### A. Step One: Whether Plaintiff Established a Prima Facie Case

In support of her Title VII claim, Plaintiff seeks to show discrimination by circumstantial, rather than direct, evidence. Thus, Plaintiff's discrimination claim is subject to the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Turner*, 563 F.3d at 1142; *Ramsey v. Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990). Under *McDonnell Douglas* Step One, a plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Ramsey*, 907 F.2d at 1007.

While the Tenth Circuit has stated that a prima facie case must be established by a preponderance of the evidence, *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 601 (10th Cir. 2014), it has also consistently emphasized that the burden at Step One is "not onerous," *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). Although the "articulation of the plaintiff's prima facie test might vary somewhat depending on the context of the claim, the critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969-70 (10th Cir. 2017) (cleaned up).

For a Title VII sex-discrimination claim, such a prima facie case must be established by a preponderance of the evidence as to each of the following elements: "that (1) [Plaintiff] is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the . . . position, and (4) she was treated less favorably than others not in the protected class." *Turner*, 563 F.3d at 1142.

In her Complaint, Plaintiff pleads that she is a woman, Complaint ¶ 68, and therefore a member of a protected class, that she suffered an adverse employment action, *id*. ¶¶ 45, 47, that she was otherwise qualified for her position of employment, *id*. ¶ 71, and implies that she was treated less favorably than other similarly situated employees not in her protected class. *Id*. ¶ 76.

Defendant Alpha Counseling does not contest elements one or two. Defendant does contest, however, that Ms. Thomson made a prima facie case that (1) she was qualified for the position and (2) that she was treated less favorably than similarly situated persons not in her protected class. *See* Motion at 34-37. Before considering each argument in turn, the court notes that Plaintiff's responding arguments in her Memorandum in Opposition, ECF No. 40, are remarkably brief and cursory, largely repeating the required elements of a prima facie case and featuring only two citations to the record (both to the same paragraph of Ms. Thomson's declaration, ECF No. 40-2, which recites facts not contained in Plaintiff's Statement of Undisputed Material Facts, *id*. at 18). However, this court nonetheless attempts to read Plaintiff's briefing liberally and resolve any doubts in Plaintiff's favor. *See N. Nat. Gas Co*., 526 F.3d at 629.

### 1.  As to Element Three (Qualification)

First, Defendant argues that Plaintiff failed to carry her Step One burden under the third element—that is, that she was otherwise qualified for the position for which she faced adverse employment action—by arguing that she expressly admitted that she was not qualified for the

7

position after Hendrix's July 1 decision to ban Ms. Thomson from the Utah State Prison. *See* Motion at 35. Defendant points to Ms. Thomson's June 17, 2022 deposition, at ECF No. 33-4 (Thomson Dep.), in which Ms. Thomson concedes that "the ability to enter the [Utah State] prison and do therapy at the prison was a critical aspect of [her] job," *id.* at 73:10-15, and that, by being banned from entering the prison, it would be "impossible for [her] to be qualified for that position." *Id*. at 16-23. However, what Ms. Thomson was referring to by conceding a lack of qualification for "that position," *id.*, is not totally clear when viewed in context. Earlier in the deposition, for example, Ms. Thomson states that "[i]f the concern was just involving the Utah State Prison, there could have been other options for me to work for [Alpha] still." *Id*. at 45:18-20.[3]

However, even reading this admission as generously as possible, the court must take into account the undisputed fact that Ms. Thomson was also not permitted in the Wyoming State Prison, where she was working at the time of her termination, *see* ECF no. 33-3 (Moore Decl.) ¶ 72; ECF No. 40 at 16 (declining to dispute this fact), and that Ms. Thomson has conceded that she should not have been allowed to work in the first place, including in a therapy position. *See* ECF No. 33-4 (Thomson Dep.) at 98:6-18.

In her opposition memorandum, ECF No. 40, Plaintiff briefly responds to Defendant's Motion to support her prima facie case of qualification by arguing *only* that "Ms. Thomson was qualified for her position, which is why Alpha hired her after her internship" and that "Ms. Thomson maintained a full caseload, counseling incarcerated sex offenders on behalf of Alpha." *Id.* at 29 (citing ECF No. 40-2 (Thomson Decl.) at 3, ¶ 19).

---

[3] This also seems to be the spirit of Plaintiff's dispute as to Defendant's assertion. *See* ECF No. 40 at 16 ¶ 128.

With all of this in mind, the question thus remains whether Alpha's decision to terminate Ms. Thomson following her ban from the Utah and Wyoming facilities, rather than transfer her to, for example, one of the "various county correctional facilities" with which Alpha contracts, *see* Motion at 3; ECF No. 33-3 (Moore Decl.) ¶ 5, "gives rise to an inference of unlawful discrimination." *DePaula*, 859 F.3d at 969-70 (cleaned up). Alternatively, *Hamilton* would have this court ask whether Ms. Thomson's prima facie case that she is qualified for the position has been shown by a preponderance. 563 F. App'x at 601. Under either standard, however, the court concludes that Ms. Thomson has not made such a showing, and thus fails to establish a prima facie case as to element three.

In making such a determination, this court wishes to emphasize that it does not mean to comment derogatorily on Ms. Thomson's current capacity to work or her other career qualifications. It is the court's understanding that Ms. Thomson was, at least as of last year, gainfully employed as an Associate Mental Health Counselor. *See* ECF No. 33-4 (Thomson Dep.) at 17:7-12. Instead, the court's determination as to the qualification element, for the purpose of establishing a prima facie case under a Title VII employment discrimination case, is merely a matter of reference to "the factual record and reasonable inferences therefrom," *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010), considered in light of the Tenth Circuit's past statements regarding the Plaintiff's burden as a matter of law.

### 2.  As to Element Four (Treated Less Favorably)

Second, Defendant argues that Thomson failed to establish a prima facie case that she was treated less favorably than others similarly situated but not in the protected class under the fourth element. *Turner*, 563 F.3d at 1142. In support of this argument, Defendant contends that Thomson must show that there were male therapists who "(1) had been banned from entering the Utah State

9

Prison; and (2) had similar performance issues as Thomson; but were nevertheless treated more favorably than she." Motion at 36 (citing *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).

Defendant's characterization of the Tenth Circuit's position on this element—that other employees not in the protected class but "similarly situated" must be similarly situated in "*all* relevant respects," *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (emphasis added)—is accurate. Determining all the relevant characteristics at issue (and thus confirming or disputing Defendant's two proposed critical characteristics) can often prove to be a difficult endeavor.

For example, to the extent that the "performance issues" Defendant points to represent improper communications with Maus, Ms. Thomson acknowledged in her deposition that she is not familiar with any male colleague who similarly communicated with an inmate. *See* ECF No. 33-4 (Thomson Dep.) at 110:11-25, 125:8-24. However, in fairness, the questions asked of Ms. Thomson in the deposition regarding other male therapists were unduly narrow—for example, asking Ms. Thomson if she knew "of any other male therapists that [Mr. Maus] told that he loved." *Id*. at 125:15-16. Thus, Ms. Thomson's concessions in her deposition do not entirely support the proposition for which Defendant cites them in its Motion—that Thomson's sworn testimony answers in the negative the question of whether there were any male therapists similarly situated along the two relevant criteria discussed above. Motion at 36.

However, this court nonetheless concludes that determining the proper boundaries of similarly situated employees is unnecessary because Plaintiff has not identified *any* male employees who have faced adverse employment decisions under *any* circumstances with which her experience can be compared. No facts have been produced or referenced in Plaintiff's

10

Complaint or opposition memorandum that would serve to establish a prima facie case as to element four. In fact, Plaintiff's opposition memorandum, in disputing Defendant's motion for summary judgment as to Claim One, fails to make any argument whatsoever as to this element, and merely recites *Turner* for the proposition that Ms. Thomson "*must* show . . . she was treated less favorably than other employees not in her protected class." ECF No. 40 at 29 (emphasis added).

*       *       *

Thus, this court concludes that Ms. Thomson failed to establish, even under the "not onerous" standard of *Orr*, 417 F.3d at 1149, a prima facie case of discrimination under the third and fourth required elements—first, that she was otherwise qualified for the position for which she faced adverse employment action, and second, that other employees not in her protected class were treated more favorably than she was. Plaintiff relies only on pleaded assertions and suspicion, which are insufficient to defeat summary judgment. *Genzer*, 934 F.3d at 1160. For this reason, submission of the case to a jury is inappropriate, and Defendant is entitled to summary judgment as a matter of law.

## B. Step Two and Three: Whether Plaintiff Rebutted Defendant's Proffered, Non-Discriminatory Reason

However, even assuming, *arguendo*, that Plaintiff's burden to establish a prima facie case is even more slight than this court estimates, summary judgment is certainly appropriate given Plaintiff's failure to carry her burden under Step Three of the *McDonnell Douglas* process. Under the *McDonnell Douglas* order of operations, if a plaintiff succeeds in establishing a prima facie case, "the burden shifts to the employer to proffer a legitimate non-discriminatory purpose for the adverse employment action." *Tabor*, 703 F.3d at 1216-17 (quotation omitted). Here, under

*McDonnell Douglas* Step Two, the employer's "burden is one of production, not persuasion," *Hamilton*, 563 F. App'x at 601 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)), and requires "offering admissible evidence sufficient for the trier of fact to conclude that petitioner was fired" for the asserted reason. *Reeves*, 530 U.S. at 142-43. The defendant's burden is "exceedingly light," *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 899-900 (10th Cir. 2017), as its stated reasons need only be legitimate and non-discriminatory "on their face." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir. 2011); *DePaula*, 859 F.3d at 970.

If the employer makes this offering, a plaintiff will avoid summary judgment only if she shows her sex "was a determinative factor in the . . . employment decision, or shows the employer's explanation for its action was merely pretext." *Tabor*, 703 F.3d at 1216-17 (cleaned up). Here, to meet this requirement at *McDonnell Douglas* Step Three, Plaintiff must show that the employer's asserted reason was merely pretextual, and therefore "was not the true reason for the employment decision." *Tabor*, 703 F.3d at 1218; *Orr*, 417 F.3d at 1149. Such a Step Three showing must be "by a preponderance of the evidence," *DePaula*, 859 F.3d at 970, and must be made *affirmatively*, by the introduction of and citation to evidence, *Goodson v. DeJoy*, No. 22-1338, 2023 U.S. App. LEXIS 19231, at *14 (10th Cir. July 27, 2023); *Rutledge v. Bd. of Cty. Comm'rs of Johnson Cty.*, No. 22-3081, 2023 U.S. App. LEXIS 18293, at *15 (10th Cir. July 19, 2023); *Lewis v. Peabody Rocky Mt. Servs.*, LLC, No. 22-1349, 2023 U.S. App. LEXIS 19891, at *8 (10th Cir. Aug. 2, 2023), with "record support" and by rendering the Defendant's proffered reasons "to be so weak, implausible, inconsistent, incoherent, or contradictory that a reasonable factfinder could find them unworthy of credence." *DePaula*, 859 F.3d at 973 (cleaned up); *cf. Hamilton*, 563 F. App'x at 601.

This court's task, therefore, is "to examine whether [Thomson's] characterization of the evidence would persuade a reasonable jury that [Alpha] used [her termination] to disguise sex

discrimination." *See Young v. Dillon Cos.*, 468 F.3d 1243, 1249-50 (10th Cir. 2006); *see also Rivera v. City and County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004). But in conducting this analysis, this court cannot act as a "super personnel department" or second-guess good-faith business judgments. *Young*, 468 F.3d at 1250; *see also Turner*, 563 F.3d at 1144. Even if this court were to determine that Plaintiff established a prima facie case under Step One, it would certainly also find that the Defendant met its burden of producing admissible evidence sufficient to support a finding that Plaintiff was fired for legitimate, non-discriminatory reasons. *See Reeves*, 530 U.S. 142-43.

In particular, Defendant has produced evidence showing that its stated reason for Ms. Thomson's discharge was "that the Utah State Prison banned her from entering the prison, and additionally, she had recent performance issues." Motion at 37 (citing ECF No. 33-3 (Moore Decl.) ¶¶ 29-53). Defendant has produced persuasive evidence, and Ms. Thomson has apparently conceded (and subsequently failed to otherwise dispute) that Deputy Warden Greg Hendrix of the Utah Department of Corrections, who was not employed by or otherwise under the control of Alpha, rather than Alpha or any employee thereof, made the decision to ban Ms. Thomson from the Utah State Prison. *See* ECF No. 33-4 (Thomson Dep.) at 75:4-76:12; *see also* ECF No. 33-3 (Moore Decl.) ¶¶ 64-71. Defendant has also produced evidence, and Plaintiff has similarly failed to dispute, that the decision to ban Ms. Thomson from the Wyoming facilities at which she was then working was *also* made by another person not affiliated with Alpha. *See* ECF No. 33-3 (Moore Decl.) ¶¶ 72-73. Finally, Defendant produced persuasive evidence, which Plaintiff also did not dispute, that the decision to fire Ms. Thomson was made "immediately" upon getting word of the ban from Hendrix. *See* Motion at 27; ECF No. 40 at 15-16 (failing to dispute this claim).

Defendant contends that Hendrix "had good reason" for his decision to ban Ms. Thomson. *See* Motion at 37-38. Plaintiffs argues that Hendrix's reasons weren't valid. *See, e.g.*, ECF No. 40

13

at 7 (disputing, for example, that there was "no legitimate basis" for Ms. Thomson and Mr. Maus to be communicating so frequently, which Defendants cite as a justification for Hendrix's decision. Motion at 37). However, the rationale of Mr. Hendrix or Mr. Leever for banning Ms. Thomson from the respective correctional facilities with which they were affiliated is, at most, marginally relevant. Mr. Hendrix is not a named party or a person whose actions or intent can be imputed to the Defendant, and neither his intent nor business acumen bear on Alpha's culpability under Title VII. *See J.W. v. Utah*, 647 F.3d 1006, 1012 (10th Cir. 2011) (affirming the district court's granting of summary judgment on grounds of lack of personal participation where the evidence showed the named defendant was not responsible for the placement decision); *accord Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007).

What matters, instead, is *Alpha's* stated rationale that Plaintiff was terminated as a result of her ban from the two prisons in which she had worked during her time employed by Alpha. *C.R. England*, 644 F.3d at 1044 ("In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision.") (cleaned up); *Swackhammer*, 493 F.3d at 1170 ("Instead of asking whether the employer's reasons were wise, fair or correct, the relevant inquiry is whether the employer honestly believed those reasons and acted in good faith upon those beliefs.") (quotation omitted). Alpha can only be held liable for discriminatory employment decisions if *Alpha itself* discriminated against Ms. Thomson on account of her sex. Because this proffered basis for termination is certainly sufficient for a

14

reasonable jury to conclude that petitioner was fired for the asserted reason,[4] *Reeves*, 530 U.S. 142-43, we move on to Step Three.

In Step Three, Plaintiff bore, in response to Defendant's Motion, the affirmative burden of pointing to admissible evidence, *Goodson*, 2023 U.S. App. LEXIS 19231, at *14, on which a reasonable jury might rely for a finding "by a preponderance of the evidence," *DePaula*, 859 F.3d at 970, that the above-stated rationale "was not the true reason for the employment decision." *Tabor*, 703 F.3d at 1218. This could have been accomplished, for example, by showing the Defendant's proffered reasons "to be so weak, implausible, inconsistent, incoherent, or contradictory that a reasonable factfinder could find them unworthy of credence." *DePaula*, 859 F.3d at 973 (cleaned up).

Here, Plaintiff failed to bear such a burden or make any such showing. In the brief and cursory argument section of her opposition memorandum, Plaintiff states that "Alpha fired Ms. Thomson within five (5) days of learning that one of the incarcerated sex offenders sent Ms. Thomson a personal letter and learned (without listening to any of the recordings) that Maus called Ms. Thomson 144 times." ECF No. 40 at 29. Interpreting this statement as liberally as possible, this court takes Plaintiff to argue that because Defendant terminated her employment so quickly, and because Defendant did not even listen to the recordings first, it must have been using the personal letter or existence of calls as mere pretext to terminate her employment, which they were already inclined to do on the basis of Ms. Thomson's sex. But even meeting Plaintiff more than halfway, this court concludes that such cursory argument, particularly without any reference to the

---

[4] And, secondarily, because Plaintiff additionally declined to dispute the basis for the performance issues to which Defendant points, *see* ECF No. 40 at 5 ¶ 47.

15

record, fails to demonstrate that Defendant's stated termination rationale was so weak, implausible, inconsistent, incoherent, or contradictory that a reasonable factfinder could find it unworthy of credence. *See DePaula*, 859 F.3d at 973.

Elsewhere in her opposition memorandum, Plaintiff claims that "Alpha gave inconsistent statements as to why Alpha terminated Ms. Thomson's employment." ECF No. 40 at 24. Those inconsistent reasons, Plaintiff asserts, are *first* that "Ms. Thomson's termination was based on her inappropriate relationship with an inmate/patient at Draper Facility," *id.* at 25, *and second*, that Ms. Thomson's termination was "based on a series of increasing problems with her performance that culminated in her pretty well getting removed from being able to work at the prison." *Id.*

To the extent that this is an implicit argument as grounds for finding that Alpha's rationale was pretextual, *see DePaula*, 859 F.3d at 973 (regarding "weak, implausible, inconsistent, incoherent, or contradictory" proffered reasons); *Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1291 (10th Cir. 2022), this court finds that such an argument is unavailing and fatally underdeveloped. Even to the extent that these two past statements by Alpha are properly considered inconsistent—which this court doubts as a preliminary matter—mere inconsistency, especially in the context of the instant case, is insufficient to show pretext.

This is because "pretext cannot be established by the mere fact that the [employer] has offered different explanations for its decision." *Litzsinger*, 25 F.4th at 1291 (quotation omitted). Instead, evidence of inconsistent explanations helps demonstrate pretext only if the employer "changed its explanation under circumstances that suggest dishonesty or bad faith." *Id.* (citations omitted). However, as in *Litzsinger*, the prison ban, the performance issues, and Ms. Thomson's relationship with Mr. Maus are "are part of the same violation." *Id.* "The fact that [Alpha] provided additional reasons [e.g., greater emphasis on the prison ban] for termination resulting from the

16

underlying cause for termination does not show pretext." *Id*. Additionally, Alpha "never abandoned its original, primary explanation for the termination," *Rutledge*, 2023 U.S. App. LEXIS 18293, at *19, and maintains, including in its motion for summary judgment, that Ms. Thomson's "performance issues," including those that served as the basis for Mr. Hendrix's decision to ban her from the Utah State Prison, *see* Motion at 37, formed part of the basis for the termination rationale. *See Rutledge*, 2023 U.S. App. LEXIS 18293, at *20-21.

Thus, even to the extent Plaintiff raises an inconsistency argument to undermine Defendant's proffered reasons for her employment as a disguise or pretext for discrimination, she fails to carry her burden of showing evidence of (or otherwise explaining) circumstances that suggest dishonesty or bad faith. *Litzsinger*, 25 F.4th at 1291. Ms. Thomson has not presented any evidence showing that Alpha's termination decision, "whether wise or mistaken, wasn't honestly arrived at." *Roberts v. Int'l Bus. Machs. Corp.*, 733 F.3d 1306, 1309 (10th Cir. 2013).

In short, this court concludes that Plaintiff's characterization of the evidence and events in question could not persuade a reasonable jury that Alpha used Ms. Thomson's ban from the Utah State Prison or her relationship with Mr. Maus merely "to disguise sex discrimination." *See Young*, 468 F.3d at 1249-50; *Hamilton*, 563 F. App'x at 606. Instead, Plaintiff's response to Defendant's proffered rationale is, at most, rooted only in "speculation" and "suspicion," *Genzer*, 934 F.3d at 1160, and mere "conjecture or surmise." *Hasan*, 935 F.3d at 1098 (10th Cir. 2019) (cleaned up). Thus, for failure to "identify sufficient evidence requiring submission to the jury," *Turner*, 563 F.3d at 1142, or otherwise establish a genuine issue of material fact as to Alpha's proffered reasons for her termination, *DePaula*, 859 F.3d at 971, this court concludes that Plaintiff has failed to defeat summary judgment. *See Thomas v. Wichita Coca-Cola Bottling Co*., 968 F.2d 1022, 1024-25 (10th Cir. 1992). As a result, Defendant's motion for summary judgment is **GRANTED**.

17

II.     **Claims Two through Four**

In her Second through Fourth Claims, Plaintiff pleads breach of contract, violation of the duty of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress. Each of these causes of action arises under state law. Pursuant to 28 U.S.C. § 1367(a), federal district courts may exercise supplemental jurisdiction to hear claims related to those over which it has original jurisdiction. However, this court would *only* have jurisdiction, if at all, over these claims under 28 U.S.C. § 1367(a), as there is no diversity among the parties under 28 U.S.C. § 1332(a) nor any federal question under 28 U.S.C. § 1331.

A federal district court may decline to exercise supplemental jurisdiction if it has granted summary judgment on all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (stating that § 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over remaining state law claims after granting summary judgment in favor of defendant on federal law claims). The decision to exercise supplemental jurisdiction is discretionary, and courts should consider in the exercise of such discretion "the nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction." *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

In the Tenth Circuit, declining to exercise supplemental jurisdiction upon the disposition of all federal claims is presumptively preferred. *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims."); *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (noting that there are "the best of reasons" for a district court to defer to a state court rather than retaining and disposing of state law claims). Thus,

18

for the foregoing reasons, and after weighing the values of judicial economy, convenience, fairness, and comity in light of the above-cited cases, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. Causes of Action Two through Four are thus **DISMISSED** without prejudice for lack of jurisdiction.

### III.     Defendant's Motion for Sanctions

In addition to moving for summary judgment, Defendant moves this court to sanction Plaintiff Megan Thomson and her attorney, Michele Anderson-West, under FED. R. CIV. P. 11(b)(2)-(3). Alpha seeks sanctions in the form of dismissal of the entire action and an award of attorney's fees and costs. Sanctions Motion at 1-2. In particular, Defendant argues that Plaintiff's First Claim (employment discrimination under Title VII), is premised on three false and sanctionable misrepresentations made in violation of Rule 11(b): (1) that Mr. Maus unilaterally sent Ms. Thomson a single letter of which she had no knowledge; (2) that Mr. Maus "had called her unilaterally on occasion"; and (3) that male therapists at Alpha have experienced the same things as Ms. Thomson and have not been discharged. Sanctions Motion at 11.

Defendant's Sanctions Motion, however, fails to cite any particular instance of such representations to the court. So too does Defendant's Reply in Support of its Sanctions Motion. *See* ECF No. 44. Thus, Defendant would pass the buck to *this court* to comb through the Plaintiff's filings for blameworthy passages. By failing to include any citations to concrete representations, Defendant did not meaningfully argue the grounds for its Sanctions Motion in the first instance. However, in the interest of fairness, this court will consider Defendant's argument for sanctions in the context of Plaintiff's Complaint and opposition memorandum. ECF No. 40.

Defendant first takes issue with Ms. Thomson's pleading regarding mail correspondence with Mr. Maus. The court notes once again that Defendant failed to cite to any particular passage

19

from the pleading, but cursorily claims that Plaintiff's Complaint "suggests" that Mr. Maus "had only sent her one letter." Sanctions Motion at 11. Defendant's argument regarding such a "suggest[ion]," however, is baseless—itself conceivably violative of Rule 11. Of the 15 instances of the term "letter" in the Complaint, none states, implies, or reasonably "suggest[s]" that the letter at issue in the Complaint was the only such letter sent by Mr. Maus to Ms. Thomson. Defendant would thus have this court sanction Plaintiff for not framing her narrative in such a way that Defendant feels is most favorable to its defense or for declining to divulge unfavorable but irrelevant facts. This is an abuse of FED. R. CIV. P. 11(b)(3) and wastes this court's time.

The same can be said of Defendant's characterization of the second supposedly sanctionable representation: that Mr. Maus had "unilaterally" called Ms. Thomson "on occasion." Sanctions Motion at 11. In fact, Defendant's second ground for sanctions is even more inappropriate—there is no indication from the Complaint that Plaintiff sought to suggest that the phone calls were only made "on occasion." In fact, it was a nontrivial part of Plaintiff's case that she made Mr. Moore aware that Mr. Maus "called her cell phone *frequently*," Complaint ¶ 22 (emphasis added), and "vented stream of consciousness conversations." *Id.* ¶ 29. In the court's view, the Complaint does not obfuscate the fact that Mr. Maus called Thomson 144 times. *Id.* at 3; *see also id.* ¶¶ 39, 64, 74.

As to the third claimed misrepresentation, Defendant fails to establish that Plaintiff or Plaintiff's counsel *knew* at the time of filing the Complaint that no male therapist, otherwise similarly situated, had not been treated more favorably, or that such information could not be discovered in discovery. In fact, after discovery and in their Opposition to Defendant's Motion for Summary Judgment, ECF No. 40, this court can find no repeated claim that such a male employee had ever been treated more favorably (which, of course, explains in part why this court granted

20

Defendant's motion for summary judgment). As discussed above, this court finds some of *Defendant's* citations and arguments regarding the relevant criteria of "similarly situated" employees to be wrongheaded at best, and potentially misleading at worst.

As for the remainder of Defendant's bullet points in the Sanctions Memo, the court does not find that any argument raised by Defendant creates an inference of intentional misrepresentation or other grounds for Rule 11 sanctions. Plaintiff's claims were ultimately non-meritorious, and Defendant achieved unequivocal victory on summary judgment. However, Defendant flew a bit too close to the sun in its Sanctions Motion.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 33, is hereby **GRANTED** as to Plaintiff's First Claim (for employment discrimination under Title VII of the Civil Rights Act of 1964). This court declines to exercise supplemental jurisdiction over Plaintiff's three remaining claims, which are hereby **DISMISSED** without prejudice for lack of jurisdiction. Finally, Defendant's Motion for Rule 11 Sanctions, ECF No. 35, is **DENIED** in its entirety.

DATED September 19, 2023.

BY THE COURT

Jill N. Parrish
United States District Court Judge